Raj V. Abhyanker (SBN 233284)
raj@legalforcelaw.com
LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, California 94040
Telephone: (650) 965-8731

Attorney for Plaintiff
LEGALFORCE RAPC WORLDWIDE, P.C.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **LEGALFORCE RAPC WORLDWIDE, P.C**., a California professional corporation, <br><br> Plaintiff, <br><br> v. <br><br> **JONATHAN LILO EBIA BITUMBA**, an individual; NESTARION INVESTMENTS CC, a South African close corporation (Reg. No. 1999/040055/23); and DOES 1–10, inclusive, <br><br> Defendants. | Case No. 5:26-cv-7173 <br><br> **COMPLAINT FOR:** <br> (1) BREACH OF WRITTEN CONTRACT; <br> (2) BREACH OF FIDUCIARY DUTY; <br> (3) CONVERSION; <br> (4) FRAUD AND FRAUDULENT CONCEALMENT; <br> (5) RECEIPT OF STOLEN PROPERTY (CAL. PENAL CODE § 496(a), (c)); <br> (6) UNJUST ENRICHMENT / MONEY HAD AND RECEIVED <br><br> **DEMAND FOR JURY TRIAL** |

**1**
INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

Plaintiff LegalForce RAPC Worldwide, P.C. ("LegalForce," "the Firm," or "Plaintiff"), by and through its undersigned counsel, alleges as follows upon personal knowledge as to its own acts and upon information and belief as to all other matters:

## INTRODUCTION

1.    This is an action to recover at least $398,699.48 misappropriated from a California law firm by its own de facto Chief Financial Officer. Defendant Jonathan Lilo Ebia Bitumba ("Bitumba") was engaged by the Firm in August 2025 and entrusted with control over the Firm's United States bank accounts, payment platforms, and commercial credit-card facilities. He abused that trust through at least nine distinct schemes, including unauthorized transfers to his own close corporation; a fabricated "Googleads" bill-pay payee that mirrored the Firm's genuine Google advertising charges; a counterfeit "ELDIB AND CO." wire beneficiary configured to mimic the Firm's genuine foreign agent, ELDIB AND COMPANY LLC, and to divert funds to a Thread Bank account; an entirely fabricated vendor "Business Intelectus, Lda" invoiced by a person who does not exist, pushed through QuickBooks using a departed employee's login credentials; unauthorized external transfers from the Firm's First Tech Federal Credit Union account; personal luxury purchases including Porsche performance parts; and payment of his own business-school tuition, all on the Firm's dime.

2.    After the payments were made, Bitumba deleted the fraudulent "Googleads" payee from the Firm's online banking records in an effort to conceal his scheme. He has admitted in writing that $34,510.52 in charges across 65 transactions were his personal expenses. Separately, and in breach of his duty of loyalty, Bitumba diverted to himself a client opportunity belonging to the Firm.

3.      Defendant Nestarion Investments CC ("Nestarion") is Bitumba's alter ego, a close corporation he solely controls, which performed no services and provided no goods to the Firm, yet received $86,698.08 of the Firm's funds at Bitumba's direction.

4.      The Firm brings this action for breach of contract, breach of fiduciary duty, conversion, fraud, receipt of stolen property under California Penal Code section 496 (with treble damages and attorneys' fees under section 496(c)), unjust enrichment, usurpation of corporate opportunity, and an accounting.

## THE PARTIES

5.      Plaintiff LegalForce RAPC Worldwide, P.C. is a professional law corporation organized under the laws of the State of California with its principal place of business at 1580 W. El Camino Real, Suite 10, Mountain View, Santa Clara County, California 94040. The Firm conducts an intellectual-property legal practice, trading inter alia as "Trademarkia," with contract personnel and operations in the United States, India, and South Africa.

6.      Defendant Jonathan Lilo Ebia Bitumba is an individual and a citizen of the Republic of South Africa, with a residence at 145 Gleneagles Drive, Silverlakes Golf Estate, Pretoria, Gauteng, South Africa. Upon information and belief, as of the filing of this Complaint Bitumba is physically present in the United States, in New York, New York, where he is enrolled beginning on or about July 13, 2026 in a six-week global module of his MBA program at the Gabelli School of Business at Fordham University, attending classes at Fordham's Lincoln Center campus in Manhattan and residing in Fordham dormitories, as confirmed by his own written statements to the Firm and by public statements of Fordham's Associate Dean of Global Initiatives and Partnerships welcoming students of the Gordon Institute of Business Science

("GIBS"), the same institution whose tuition Bitumba charged to the Firm's credit card, to the Fordham Gabelli collaborative program for Summer 2026.

7. Defendant Nestarion Investments CC is a close corporation registered under the laws of the Republic of South Africa (Close Corporations Act 69 of 1984), registration number 1999/040055/23, with its registered office at 378 Justice Mahomed Street, Brooklyn, Pretoria 3370, 0011, South Africa. At all material times, Bitumba was the sole, alternatively the controlling, member of Nestarion and exercised complete dominion and control over it.

8. The true names and capacities of Defendants sued herein as DOES 1 through 10 are unknown to Plaintiff, which will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes that each fictitiously named Defendant is responsible in some manner for the occurrences alleged herein.

**JURISDICTION AND VENUE**

9. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2). Plaintiff is a citizen of California; Defendants are citizens or subjects of a foreign state (the Republic of South Africa) and are not lawfully admitted for permanent residence in the United States; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. This Court has specific personal jurisdiction over Bitumba because he purposefully established extensive, continuing, and suit-related contacts with California and this District. Pursuant to a written consulting agreement dated August 12, 2025, Bitumba knowingly accepted engagement by Plaintiff as its Chief Financial Strategy & AI Transformation Consultant and senior financial decision-maker. The agreement contemplated his direct reporting to Plaintiff's Chief Executive Officer in Mountain View, California, close coordination with Plaintiff's executive and finance leadership, responsibility for global financial

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

strategy and operations, and the potential conversion of his role to a full-time Chief Financial Officer position primarily based at Plaintiff's Mountain View office. In performing that engagement, Bitumba exercised authority over Plaintiff-owned Chase accounts and ACH facilities, as well as Plaintiff's Convera and Wise accounts, all owned, operated, or administered through Plaintiff's Mountain View headquarters. He submitted invoices, payment requests, financial reports, and other financial communications to Plaintiff's management in California, and Plaintiff's California management relied upon those communications in authorizing the release of funds, including the payment to the fabricated vendor Business Intelectus, Lda alleged herein. The claims arise directly from Bitumba's misuse of the California-centered consulting relationship, financial authority, systems access, and decision-making responsibilities he voluntarily accepted, and from his alleged misrepresentations, concealments, and diversions directed toward Plaintiff and its management in this District.

11.     In the alternative, this Court has personal jurisdiction over Bitumba and Nestarion under Federal Rule of Civil Procedure 4(k)(2), because Plaintiff's claims arise from Defendants' contacts with the United States as a whole,  including Bitumba's engagement by a U.S. law firm, his control of and raids upon U.S. bank accounts, his receipt of U.S. funds, and his physical presence and enrollment in an academic program in New York,  and Defendants are not subject to the general jurisdiction of the courts of any single state.

12.     This Court has personal jurisdiction over Nestarion because Nestarion knowingly received $86,698.08 transferred from the Firm's United States accounts at Bitumba's direction, was at all times the alter ego and instrumentality of Bitumba, and is chargeable with Bitumba's California-directed contacts.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the harm

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

to Plaintiff's Mountain View headquarters and the administration of the accounts and finances raided by Bitumba, and under 28 U.S.C. § 1391(c)(3), because Defendants are not resident in the United States and may be sued in any judicial district.

14.    Intradistrict Assignment: Pursuant to Civil Local Rules 3-2(c) and 3-2(e), this action is properly assigned to the San Jose Division because a substantial part of the events giving rise to the claims occurred in Santa Clara County, where Plaintiff maintains its principal place of business.

15.    On or about August 12, 2025, Plaintiff and Bitumba entered into a written consulting agreement, executed electronically by both parties, pursuant to which Plaintiff engaged Bitumba as an independent contractor serving as Chief Financial Strategy & AI Transformation Consultant. A true and correct copy of the agreement and its electronic-signature certificate is attached as **Exhibit A**.

16.    Under the agreement, Bitumba was to provide senior strategic financial leadership, report directly to Plaintiff's Chief Executive Officer, serve as the principal financial decision-maker and strategist within the organization, lead Plaintiff's global finance team, and use Plaintiff's systems, data, accounts, tools, and resources solely for Plaintiff's benefit.

17.    By reason of the position of trust, authority, systems access, and financial control he accepted and exercised, Bitumba owed Plaintiff fiduciary duties, including duties of loyalty, good faith, candor, proper stewardship of Plaintiff's funds and systems, avoidance of conflicts and secret profits, and full accounting for funds under his control.

## GENERAL ALLEGATIONS

*A.  Bitumba's Engagement and Duties*

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

18. On or about August 12, 2025, the Firm and Bitumba entered into a written engagement agreement (the "Engagement Agreement"), a true and correct copy of which is attached hereto as Exhibit A, pursuant to which Bitumba was engaged to render financial and management services to the Firm, including in the capacity of de facto Chief Financial Officer.

19. The material express, alternatively implied terms of the Engagement Agreement included that Bitumba would:

    a. render his services honestly, in good faith, and in the best interests of the Firm;

    b. deal with the Firm's funds, bank accounts, payment platforms, and credit facilities solely for authorized and legitimate business purposes of the Firm;

    c. not incur, authorize, or cause any expenditure or transfer of the Firm's funds other than for the bona fide business purposes of the Firm;

    d. keep full and accurate records of, and account to the Firm for, all funds of the Firm under his control; and

    e. not misappropriate, divert, or apply the Firm's funds for his own benefit.

20. By reason of the position of trust and financial control that Bitumba occupied, he owed the Firm fiduciary duties, including the duties of loyalty and good faith, the duty to avoid conflicts between his own interests and those of the Firm, the duty not to make any secret profit, the duty not to misappropriate the Firm's funds or business opportunities, and the duty to account fully to the Firm.

21. Bitumba's engagement terminated on or about May 22, 2026.

### B. The Nestarion Transfers

22. During the period October through December 2025, Bitumba caused the Firm to transfer the Firm's funds to Nestarion in the following amounts:

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

| Date | Transfer Reference | Amount (USD) |
|---|---|---|
| 14 Oct. 2025 | TRANSFER-1752032917 (code 27024-US)  NESTARION INVESTMENTS CC | $11,314.00 |
| 18 Dec. 2025 | OTR6480392 (ref 4993912522) NESTARION INVESTMENTS CC | $75,384.08 |
| | **Total** | **$86,698.08** |

23.    The transfers, totaling $86,698.08 (the "Nestarion Transfers"), were not authorized by the Firm as legitimate business expenditures. There exists no invoice, contract, agreement, business purpose, consideration, or record of repayment supporting or justifying the Nestarion Transfers.

24.    The Nestarion Transfers conferred no benefit upon the Firm and were made for the benefit of Bitumba, alternatively of Nestarion as Bitumba's vehicle.

### C. The Admitted Personal Charges

25.    During the relevant period, Bitumba caused charges to be made to the Firm's commercial credit-card facility for his own personal benefit and not for any business purpose of the Firm.

26.    By written response dated May 29, 2026, Bitumba admitted that charges totaling $34,510.52, across 65 identified transactions, represented his personal expenses (the "Admitted Charges"). The Admitted Charges were not authorized by the Firm, conferred no benefit upon it, and have not been repaid.

### D. The GIBS Tuition Charge

27.    On or about April 14, 2026, Bitumba caused the sum of $6,443.00 to be charged to the Firm's credit-card facility in payment of his own postgraduate tuition fees to the Gordon Institute of Business Science in South Africa,  the very MBA program whose "global module" now places him at Fordham University in New York. The charge was incurred for Bitumba's personal benefit, served no business purpose of the Firm, and was never reimbursed.

### E.  The Diverted PayPal Refund

28.    On or about April 15, 2026, Bitumba caused a payment of $6,115.73 to be made from the Firm's account to a PayPal account. On or about April 30, 2026, Bitumba caused that same sum to be refunded from the PayPal account to himself personally, and not to the Firm. This payment and refund were transactions distinct from the GIBS tuition charge, and the sum of $6,115.73 was thereby misappropriated by Bitumba.

### F.  The Soul Performance Charge (Porsche Parts)

29.    On or about December 4, 2025, Bitumba caused an ACH debit of $8,260.00 to be made from the Firm's "Trademark" account (ending 8079), in favor of Soul Performance (originator identification 9215986202; trace number 021000029538372), in payment for high-performance Porsche motor-vehicle parts.

30.    The Firm owns no Porsche and no vehicle to which the parts pertain. Bitumba personally owns a grey 2023 Porsche, registration LG95TXGP, registered in his name in 2025. The charge was incurred for Bitumba's personal benefit, was not authorized by the Firm, and conferred no benefit upon the Firm.

### G.  The "Googleads" Duplicate-Payment Scheme

**9**
INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

31.    The Firm settles its genuine Google advertising charges by automated debit initiated by Google, bearing the originator name "GOOGLE," originator identification F770493581, and the entry descriptor "ADWORDS" or "PURCHASE."

32.    Bitumba created, within the Firm's online banking facility, a separate bill-payment payee named "Googleads," directed to an account ending 8595, which was not Google and was not a payee authorized by the Firm.

33.    In each of the five periods set out below, in addition to the genuine Google charge for that period, Bitumba caused a duplicate online ACH payment of a corresponding amount to be made to the "Googleads" payee (account ending 8595):

| Date | Duplicate ACH to "Googleads" (a/c …8595) | Amount (USD) | Genuine Google charge, same period |
|---|---|---|---|
| Jan. 26, 2026 | ACH 11204650199 | $45,319.29 | $38,793.43 (Jan. 12) |
| Feb. 19, 2026 | ACH 11207936766 | $41,353.42 | $41,353.42 (Feb. 13) |
| Mar. 19, 2026 | ACH 11211635199 | $31,637.62 | $31,637.62 (Mar. 20) |
| Apr. 13, 2026 | ACH 11214927917 | $41,190.61 | $41,190.61 (Apr. 14) |
| May 12, 2026 | ACH 11218975756 | $29,976.21 | $26,976.21 (May 12) |
| | **Total** | **$189,477.15** | |

34.    The duplicate payments to the "Googleads" payee totaled $189,477.15, were not authorized by the Firm, were not payments to Google, and conferred no benefit upon the Firm.

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

35. After the payments had been made, Bitumba deleted the "Googleads" payee from the Firm's online banking records in an attempt to conceal the scheme, as reflected in the Firm's banking audit records.

### H. The First Tech External Transfers

36. Between January 30 and March 23, 2026, Bitumba, using access to the Firm's account at First Tech Federal Credit Union (ending 52472700), caused nine successive external transfers of $4,375.00 each to be initiated to an external account (ending 44380228) not authorized by the Firm or its owner.

37. Eight of those transfers, totaling $35,000.00, were completed; the ninth was returned on or about March 25, 2026, when the account was frozen.

### I. The Counterfeit "ELDIB AND CO." Beneficiary and the Diverted Convera Transfer

38. The Firm remits payments to its foreign associate agents and law firms through Convera, a cross-border payments provider. Among the Firm's genuine foreign agents is the intellectual-property firm whose payments are received under the beneficiary name "ELDIB AND COMPANY LLC."

39. On or about April 1, 2026, two transfers of $6,445.00 each were issued through Convera: (a) transfer OTR6544762, to beneficiary "ELDIB AND COMPANY LLC," which the Firm's genuine agent has confirmed was received; and (b) transfer OTR6544752, to a near-identically named beneficiary, "ELDIB AND CO.," which the genuine agent has confirmed in writing was not received, and whose beneficiary name, account number, and country do not correspond to the agent's firm in any respect.

40. The counterfeit "ELDIB AND CO." beneficiary was configured to direct funds to an account at Thread Bank, 210 E Main St., Rogersville, Tennessee 37857, routing number

064209588, account number 200002378595. Upon information and belief, Bitumba created or caused the creation of the counterfeit beneficiary, deliberately configured its name to mimic the Firm's genuine agent so as to disguise the misdirection of funds, and fabricated and uploaded to the Firm's QuickBooks accounting system a false invoice to lend the transfer an appearance of legitimacy. Records reflecting the diverted wire and the counterfeit beneficiary are attached hereto as Exhibit C.

41.    The Thread Bank account number to which OTR6544752 was directed, 200002378595, ends in the digits 8595, the same terminal digits as the unauthorized account to which Bitumba directed the "Googleads" duplicate payments alleged above. Upon information and belief, the two are the same account, controlled by Bitumba, further evidencing a common scheme of counterfeit payees mimicking legitimate vendors and agents. The Firm has no relationship with the actual recipient of OTR6544752, did not authorize the transfer to that recipient, and received no benefit from it. The sum of $6,445.00 was thereby misappropriated.

*J.  The Fabricated Vendor: "Business Intelectus, Lda" and the Fictitious "Dennilson Cotacao"*

42.    In or about September and October 2025, Bitumba fabricated a purported foreign vendor named "Business Intelectus, Lda" and a fictitious individual named "Dennilson Cotacao," together with a vendor statement comprising seventeen invoices purporting to reflect foreign trademark and patent agent services rendered to the Firm.

43.    40. Neither "Business Intelectus, Lda" nor "Dennilson Cotacao" exists as a real law firm or person: there is no website for Business Intelectus, Lda; there is no LinkedIn presence or other public record for anyone named Dennilson Cotacao; the seventeen invoices correspond to no trademark, patent, or client matter anywhere in the Firm's administrative systems; and the

reference codes appearing on the statement (including "MID#," "ARIPO-REF," and "WIPO-BATCH" designations) correspond to no actual ARIPO or WIPO filing or agent engagement in the Firm's records.

44.    To lend the fabricated vendor a false air of authenticity, a fabricated email dated September 15, 2025, purporting to be from "Dennilson Cotacao" at the address dennilson@businessintelectus.com, was directed to the Firm's management demanding payment of the purportedly overdue invoices, an email that is internally inconsistent on its face, in that it was purportedly sent on September 15, 2025, yet demands payment "within 7 days from 17/10/2025." Upon information and belief, Bitumba fabricated this communication.

45.    The corresponding accounting entry was created and approved in the Firm's QuickBooks system using login credentials belonging to a former employee, after that employee had already departed the Firm, credentials to which, upon information and belief, Bitumba alone had access and control at that time.

46.    In reliance on Bitumba's representation to the Firm's management that only $25,750.00 was due "as per AP report," the Firm authorized and, in or about October 2025, paid $25,750.00 via Wise to the fabricated vendor. The receiving Wise account has since been closed. Upon information and belief, Bitumba diverted the $25,750.00 to himself or to an account he controls, under the false pretense of paying a legitimate foreign agent. The fabricated statement, invoices, and impersonation email are attached hereto as Exhibit D. The funds have not been repaid.

### K.  Summary of the Amounts Misappropriated

47.    The amounts misappropriated by Bitumba are summarized as follows:

| Item | Amount (USD) |
| --- | --- |

| | |
|---|---|
| Nestarion Transfers (Bitumba and Nestarion) | $86,698.08 |
| Admitted Personal Charges (Bitumba) | $34,510.52 |
| GIBS Tuition Charge (Bitumba) | $6,443.00 |
| Diverted PayPal Refund (Bitumba) | $6,115.73 |
| Soul Performance – Porsche Parts (Bitumba) | $8,260.00 |
| Google Ads Duplicate Payments (Bitumba) | $189,477.15 |
| First Tech External Transfers (Bitumba) | $35,000.00 |
| Diverted Convera Transfer OTR6544752 — Counterfeit "ELDIB AND CO." (Bitumba) | $6,445.00 |
| Fabricated Vendor "Business Intelectus, Lda" — Wise Payment (Bitumba) | $25,750.00 |
| **Total** | **$398,699.48** |

48.    The Firm's ongoing forensic review has identified further fraudulent charges of approximately $269,044.79 incurred on Firm credit cards issued to various personnel, more fully set out in the schedule attached hereto as Exhibit B. Mr. Bitumba has used cards of at least one such individual to purchase personal items himself, and had access to other employees credit cards.   Responsibility for those charges remains under investigation, and they are not included in the amounts claimed in this action. Plaintiff reserves the right to amend to assert

additional sums as discovery, and its investigation proceeds.   In total, the estimated theft from the firm is estimated to be at least $667,744.27 during the relevant time period.

### M. Alter Ego Allegations (Nestarion)

49.    At all material times, Nestarion was the alter ego of Bitumba and a mere shell, instrumentality, and conduit through which Bitumba diverted the Firm's funds for his own benefit, in that: (a) Bitumba was the sole, alternatively the controlling, member of Nestarion and exercised complete dominion and control over it; (b) Nestarion conducted no genuine business with the Firm and rendered no goods or services to the Firm in respect of which the Nestarion Transfers could constitute payment; and (c) Nestarion was used to receive and conceal the Firm's funds for Bitumba's benefit, without separate or legitimate corporate purpose. There exists such a unity of interest and ownership between Bitumba and Nestarion that their separate personalities do not in reality exist, and adherence to the fiction of Nestarion's separate existence would sanction fraud and promote injustice. Each of Bitumba and Nestarion is accordingly liable for the acts of the other with respect to the Nestarion Transfers.

**FIRST CAUSE OF ACTION**

**Breach of Written Contract**
**(Against Defendant Bitumba)**

50.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

51.    Plaintiff and Bitumba entered into the Engagement Agreement, a valid and enforceable written contract. Plaintiff performed all conditions, covenants, and promises required of it under the Engagement Agreement, except those excused by Bitumba's conduct.

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

52.    Bitumba breached the Engagement Agreement by, among other things, causing the Nestarion Transfers, the Admitted Charges, the GIBS tuition charge, the diverted PayPal refund, the Soul Performance charge, the Google Ads duplicate payments, the First Tech external transfers, the diverted Convera transfer OTR6544752, and the fabricated "Business Intelectus, Lda" payment, and by failing to keep accurate records of and account for the Firm's funds under his control.

53.    As a direct and proximate result of Bitumba's breaches, Plaintiff has suffered damages in the sum of at least $398,699.48, according to proof at trial, together with prejudgment interest thereon.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty
### (Against Defendant Bitumba)

54.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

55.    By reason of his position as de facto Chief Financial Officer entrusted with control over the Firm's funds, accounts, and credit facilities, Bitumba owed the Firm fiduciary duties of loyalty, good faith, and full disclosure and accounting.

56.    Bitumba breached those duties by misappropriating the Firm's funds for his own benefit through each of the schemes alleged above, by concealing his conduct,  including by deleting the fraudulent "Googleads" payee from the Firm's online banking records,  and by failing to account for the Firm's funds under his control.

57.    Bitumba's breaches were a direct and proximate cause of damages to Plaintiff of at least $398,699.48, according to proof. Bitumba's conduct was intentional, fraudulent, malicious, and

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

oppressive within the meaning of California Civil Code section 3294, entitling Plaintiff to punitive and exemplary damages.

## THIRD CAUSE OF ACTION

### Conversion
### (Against All Defendants)

58.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

59.    Plaintiff owned and had the right to possess specific, identifiable sums of money in its bank accounts and credit facilities, including the specific sums identified above totaling $398,699.48.

60.    Bitumba intentionally and substantially interfered with Plaintiff's property by taking possession of, transferring, and applying those sums for his own benefit without Plaintiff's consent. Nestarion converted the $86,698.08 in Nestarion Transfers by receiving and retaining those funds without any right thereto.

61.    Plaintiff did not consent to and has been damaged by Defendants' conduct in the sum of at least $398,699.48 (as to Bitumba) and $86,698.08 (as to Nestarion, jointly and severally with Bitumba), according to proof, together with prejudgment interest under California Civil Code sections 3336 and 3287. Defendants' conduct was fraudulent, malicious, and oppressive, entitling Plaintiff to punitive damages under Civil Code section 3294.

## FOURTH CAUSE OF ACTION

### Fraud and Fraudulent Concealment
### (Against Defendant Bitumba)

62.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

63.    As the Firm's de facto Chief Financial Officer and fiduciary, Bitumba owed the Firm a duty of full and honest disclosure concerning all transactions he caused in the Firm's accounts.

64.    Bitumba knowingly and intentionally deceived the Firm by, among other things: (a) creating a bill-payment payee falsely named "Googleads" to disguise transfers to an unauthorized account ending 8595 as legitimate Google advertising payments, and causing five such payments totaling $189,477.15 on the dates and in the amounts particularized above; (b) creating or causing the creation of a counterfeit Convera beneficiary named "ELDIB AND CO." deliberately configured to mimic the Firm's genuine agent, "ELDIB AND COMPANY LLC" and fabricating and uploading to QuickBooks a false invoice to paper the diversion of $6,445.00 (transfer OTR6544752) to a Thread Bank account he controls; (c) fabricating the vendor "Business Intelectus, Lda," the fictitious individual "Dennilson Cotacao," a statement of seventeen sham invoices bearing false ARIPO/WIPO reference codes, and an impersonation email dated September 15, 2025, and using a departed employee's QuickBooks credentials to create and approve the entry, thereby inducing the Firm to pay $25,750.00 via Wise in October 2025 on his representation that the amount was due "as per AP report"; (d) concealing that the Nestarion Transfers, the Soul Performance charge, the GIBS tuition charge, the PayPal diversion, and the First Tech transfers were for his personal benefit; and (e) deleting the "Googleads" payee from the Firm's online banking records to conceal the scheme after the payments were made.

65.    Bitumba made these misrepresentations and concealments with the intent that the Firm rely upon the apparent legitimacy of the transactions and refrain from investigating or stopping them. The Firm actually and justifiably relied: among other things, the Firm's management expressly authorized the $25,750.00 Business Intelectus payment in direct reliance on

Bitumba's representation that the amount was due per the accounts-payable report, and the Firm did not detect or halt the remaining transactions until its subsequent forensic review.

66.     As a direct and proximate result, Plaintiff has been damaged in the sum of at least $398,699.48, according to proof. Bitumba's conduct constitutes fraud, malice, and oppression within the meaning of Civil Code section 3294, entitling Plaintiff to punitive and exemplary damages.

### FIFTH CAUSE OF ACTION

### Receipt of Stolen Property - Cal. Penal Code § 496(a), (c)
### (Against All Defendants)

67.     Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

68.     Bitumba obtained the Firm's funds identified above by theft within the meaning of California Penal Code sections 484 and 496(a), in that he took, and obtained by false pretense and embezzlement, property belonging to the Firm with the intent to permanently deprive the Firm thereof, and thereafter concealed, withheld, and aided in concealing and withholding those funds from the Firm, knowing them to be so obtained.

69.     Nestarion received, concealed, and withheld the $86,698.08 in Nestarion Transfers, knowing the funds to have been obtained by theft, alternatively under circumstances in which its controlling member Bitumba's knowledge is imputed to it.

70.     Pursuant to California Penal Code section 496(c), and as confirmed in *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal. 5th 333 (2022), Plaintiff, having been injured by violations of section 496(a), is entitled to three times the amount of its actual damages no less than $1,196,098.44 as against Bitumba and $260,094.24 as against Nestarion (jointly and severally within the trebled Nestarion amount), together with costs of suit and reasonable attorneys' fees.

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

## SIXTH CAUSE OF ACTION

### Unjust Enrichment / Money Had and Received
### (Against All Defendants - Pleaded in the Alternative)

71.    Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

72.    Defendants received money that was intended for and belonged to Plaintiff. Bitumba was enriched in the sum of at least $398,699.48, and Nestarion in the sum of $86,698.08, at Plaintiff's expense and without any legal justification, consideration, or benefit to Plaintiff.

73.    In equity and good conscience, Defendants may not retain those funds, and each is obligated to make restitution to Plaintiff of the amounts by which it was unjustly enriched, together with interest thereon. Plaintiff is further entitled to the imposition of a constructive trust over the misappropriated funds and all property traceable thereto, including, upon information and belief, any Porsche motor-vehicle parts and any tuition credits or refunds attributable to the Firm's funds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a.   Against Bitumba, compensatory damages of no less than $398,699.48, according to proof;

b.   Against Bitumba and Nestarion, jointly and severally, compensatory damages of no less than $86,698.08 in respect of the Nestarion Transfers;

c.   Treble damages pursuant to California Penal Code section 496(c), no less than $1,196,098.44 against Bitumba and no less than $260,094.24 against Nestarion, together with reasonable attorneys' fees and costs of suit pursuant to section 496(c);

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL

d.  Punitive and exemplary damages against Bitumba pursuant to California Civil Code section 3294, according to proof;

e.  A declaration that Nestarion is the alter ego of Bitumba and that its separate juristic personality be disregarded in respect of the Nestarion Transfers;

f.  Imposition of a constructive trust over all misappropriated funds and property traceable thereto;

g.  A full accounting from each Defendant;

h.  Restitution and disgorgement, according to proof;

i.  Prejudgment interest at the maximum lawful rate, including under California Civil Code sections 3287, 3288, and 3336;

j.  Costs of suit incurred herein; and

k.  Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6, Plaintiff demands a trial by jury on all issues so triable.

Dated: July 13, 2026

Respectfully submitted,

LEGALFORCE RAPC WORLDWIDE, P.C.

By:  /s/ Raj V. Abhyanker
      Raj V. Abhyanker (SBN 233284)
      Attorney for Plaintiff
      LegalForce RAPC Worldwide, P.C.

INITIAL COMPLAINT - DEMAND FOR JURY TRIAL